UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VICTOR B. PINEDA,

        Plaintiff,

    v.

CITY OF SEATTLE,

        Defendant.

Case No. C06-0157RSL

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment (Dkt. #18) filed by defendant the City of Seattle (the "City"). Plaintiff Victor Pineda, a Filipino American and a former employee of the City, alleges that the City discriminated against him based on his race and national origin.

Plaintiff's position was reclassified in 2004 as the result of a City-wide reclassification study of all non-represented financing and accounting positions. Plaintiff asserts that his direct supervisor discriminated against him by not supporting his subsequent internal appeal as much as he supported the appeal of one of Pineda's Caucasian colleagues.

For the reasons set forth below, the Court grants the City's motion.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

## II.  DISCUSSION

### A.  Background Facts.

Beginning in the 1990s, plaintiff worked as a Rates Management Analyst in the City's Department of Administrative Services.  In that position, he was responsible for assisting in the preparation of budgets for divisions within his department, analyzing financial performance, developing rates to charge other departments for the use of space in order to properly allocate costs, and conducting special studies from time to time.

In 2001, plaintiff began reporting to supervisor Del Mercure in the Fleets & Facilities Division ("FFD").  Pineda and Mercure had poor communication and a personality conflict.[1]  In annual performance evaluations, Mercure consistently rated Pineda as "Needs Improvement" in communications.  Pineda acknowledged that communication between the two was strained and affected their work relationship: "I would respond to him briefly, probably.  In the narrowest terms, he can ask further questions and I would reply.  If he asked me precisely what things meant, I would reply."  Pineda Dep. at p. 144.  Pineda acknowledged that his work was sometimes incomplete and that he was "spotty" in giving Mercure weekly reports.  Pineda Dep. at pp. 143, 145.  Their communication deteriorated to the point that they sought assistance from a mediator.  Pineda does not allege that their communication problems or the mediation were the result of discrimination.  Instead, Pineda believed that their conflicts were caused by mutual stubbornness and his belief that Mercure did not understand the work they did.  Pineda Dep. at 177-78; Declaration of Del Mercure, (Dkt. #21) ("Mercure Decl."), Ex. G at pp. 29-31 (Pineda

---

[1] For example, on one occasion, Pineda requested permission to move to another cubicle. When Mercure did not respond promptly to the request, Pineda "interpreted [his] nonresponsiveness as a 'yes.'"  Plaintiff's Response at p. 3; Pineda Dep. at p. 37.  He observed movers moving other workers in his work area, and directed them to move him to the other cubicle.  Pineda Dep. at p. 38.  When Mercure learned what Pineda had done, he was "upset." Id.  Pineda refused to move back, informing Mercure that "the stuff is already moved," and Mercure eventually dropped the issue.  Id.  Pineda "got the impression that [he] arm-twisted him into getting that spot."  Id.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 2

stating in response to an annual performance appraisal, "I don't think Del fully understands program budget elements and their relationship to operating budget elements. . . . Del's ongoing capacity to not understand FFD budget variables just wore me out").

In January 2002, the City's Personnel Department initiated the Finance/Accounting Title Study ("FATS") to update and improve the classifications and pay programs for professional accounting and finance positions, including plaintiff's position. The focus of the process was to determine what job tasks an employee was performing and to ensure that his or her position was classified consistently with those duties. Two analysts, Jimmy Woo and Steve Aspiras, jointly examined 117 positions to determine their appropriate classification. On December 17, 2003, the Personnel Department informed Pineda of its proposal to reclassify his position to a Senior Finance Analyst. The position of a Caucasian employee, Rod Johnson, was also reclassified to a Senior Financial Analyst. The new classification included a lower salary range. Although Pineda was entitled to maintain his existing hourly rate, his salary was frozen at its current level, and he was not entitled to an annual cost of living adjustment until the pay range for his new position increased to equal his existing pay rate.

Pineda submitted an appeal of the reclassification on January 16, 2004. Mercure also signed the request for reconsideration stating that FFD joined Pineda in asserting that the new classification of his position was incorrect. Requests for reconsideration were reviewed by three-person panels, who then made a recommendation to the Personnel Director. Pineda requested and was granted an extension of time to present his appeal materials in late April 2004. Pineda requested that his position be upgraded to a level II Strategic Advisor[2] rather than being downgraded.

Pineda did not request assistance or seek advice from Mercure in preparing for the

---

[2] "A strategic advisor serves as a key advisor to senior officials, and/or makes recommendations which help shape significant City policies or programs, and/or represents the City is strategic arenas, without having full accountability for managing resources to achieve specific outcomes." Declaration of Plaintiff's Counsel, (Dkt. #26), Ex. N at p. 1.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 3

reconsideration meeting. Pineda Dep. at p. 231. Pineda submitted a revised Position Description Questionnaire ("PDQ") in support of his request. Pineda stayed up all night the night before the meeting to complete the revised PDQ. Pineda Dep. at p. 231. Although he knew that his supervisor was supposed to complete management's section after he completed the employee section of the form, he did not submit the PDQ to Mercure until the morning of the meeting. Id. at p. 247.

On April 30, 2004, the panel met with Pineda, Mercure, and two other senior managers from FFD for approximately one hour. During the meeting, Pineda "waited for them to ask me questions and I just merely responded." Pineda Dep. at p. 297. Plaintiff "appeared tired" and his presentation was "somewhat disjointed." Declaration of Edie Jorgensen, (Dkt. #23) ("Jorgensen Decl.") at ¶ 4. The panel subsequently denied his appeal, finding that "it was not demonstrated that this position directly interacts with Executive and Legislative officials or staff, nor performs this work on a regular basis to warrant consideration for allocation to a Strategic Advisor classification." Declaration of Nancy Schaefer, (Dkt. #22) ("Schaefer Decl."), Ex. B.

Plaintiff filed his complaint in King County Superior Court on January 5, 2006. Defendant subsequently removed the case to this Court on January 31, 2006.

**B.     Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.     Analysis.**

In his response memorandum, plaintiff concedes that summary judgment is appropriate

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 4

on nearly all of the claims asserted in his complaint, including hostile work environment, retaliation, infliction of emotional distress, § 1981, § 1983, and § 1985. Plaintiff's Opposition at p. 2 n.1. Accordingly, the Court grants the City's motion for summary judgment on those claims.

Plaintiff's remaining claim is for disparate treatment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* and under the Washington Law Against Discrimination (the "WLAD"), RCW 49.60 *et seq.* Discrimination claims under both statutes are analyzed under the burden shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to proffer a legitimate non-discriminatory reason for the adverse employment action. <u>Id.</u> at 802. If the employer meets its burden, the burden shifts back to the plaintiff to show that the proffered reason is a pretext for unlawful discrimination. <u>Id.</u>; <u>Washington v. Boeing</u>, 105 Wn. App. 1, 13 (2000).

Plaintiff initially argued that his negative performance appraisals constituted adverse employment actions. However, he has abandoned that argument and now asserts that he experienced two adverse employment actions: (1) the reclassification of his position, and (2) the denial of his request that his position be upgraded to a level II Strategic Advisor. Plaintiff does not allege that Mercure's lack of support for his appeal was in itself an adverse employment action.[3] Even if he had made that assertion, it would fail because the decisionmakers have stated that whether Pineda's "management was or was not supportive of his request was not relevant to the decision because the facts did not justify a different classification." Schaefer Decl. at ¶ 16; Jorgensen Decl. at ¶ 8 (explaining that the panel considered "whether the facts of

---

[3] Aspiras testified during his deposition that Mercure appeared to support Pineda's appeal less than Johnson's. Aspiras Dep. at p. 93. Based on that testimony, the Court assumes for purposes of this motion that Mercure provided less support for Pineda's appeal than for Johnson's. However, Aspiras did not believe that race had any bearing in either Johnson's or Pineda's reclassification appeals. <u>Id.</u> at p. 157.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 5

his job supported his appeal," not whether management wanted a particular classification).[4] Furthermore, the panel members stated that they obtained sufficient information about Pineda's job duties, and Pineda has not identified any facts that Mercure failed to provide. Because Mercure's alleged lack of support was not a basis for the reclassification decision, it was not an adverse employment action. See, e.g., Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994) (noting that negative performance evaluations were not adverse actions when "they were not used as a basis for any adverse actions" against plaintiff).

### 1.  Plaintiff's Prima Facie Case.

To establish a prima facie case of discrimination, an employee must show that (1) he belongs to a protected class, (2) he was performing up to the employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) other employees with similar qualifications were treated more favorably. McDonnell Douglas, 809 U.S. at 802; Washington, 105 Wn. App. at 13. It is undisputed that plaintiff is a member of a protected class.

The City argues that plaintiff did not experience an adverse employment action because its reclassification process reclassified *positions*, not particular employees. Even though the process did not consider performance and other employee-specific factors, the reclassification and reconsideration were conducted on a case by case basis. More importantly, one of the effects of the process was to freeze plaintiff's compensation. Certainly, an employer cannot shield itself from liability by focusing on the changes to a position and ignoring the fact that those changes necessarily affect the employee in that position. Because the reclassification negatively affected plaintiff's compensation, it was an adverse employment action.

---

[4] Although Aspiras testified that he believed management support could sway the panel, his opinion, as a non-decisionmaker, is speculative and insufficient to create an issue of fact. In fact, when asked whether a lack of management support would make a difference, Aspiras testified, "It shouldn't be, but again – not being on the appeals panel I really can't say. That's for them, how they're going to weigh it, but from what I have seen, I would have to say it's a minus." Aspiras Dep. at p. 199.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 6

Notably, plaintiff does not allege that the initial decision to reclassify his position was discriminatory. Nor could he, as Johnson, the only employee to whom Pineda compares himself, was also reclassified from a Rates Management Analyst to a Senior Financial Analyst. Rather, Pineda argues that the fact that Johnson was successful in his appeal and plaintiff was not reflects discrimination. Plaintiff must show that he and Johnson "were doing substantially the same work." Washington, 105 Wn. App. at 13. Although the two were in the same job classification, that is not necessarily indicative of their job duties, as reflected by the need for the reclassification process. Furthermore, although plaintiff alleges that their duties were more similar than different, he acknowledged that Johnson "mainly" performed legislative work, while Pineda spent "very little" time reviewing legislation. Pineda Dep. at pp. 112, 114. Pineda's position "d[id] the review of the bills" before they were approved, interacted with division heads, managers, and designees, and was responsible for budget and financial analysis for his assigned division. Id. at p. 112; Aspiras Dep. at p. 198 (explaining that the two positions had some overlap, but Pineda's "was more on the budget and finance side" and Johnson's position's "emphasis was more some special projects"). Accordingly, plaintiff has not shown that he and Johnson were similarly situated.

The fact that plaintiff and Johnson were not performing comparable work also dooms plaintiff's failure to promote claim. Assuming without deciding that the denial of the upgrade was, as plaintiff alleges, a denial of a promotion, plaintiff must establish that (1) he belongs to a statutorily protected class; (2) he applied for and was qualified for an available position; (3) he was rejected despite his qualifications; and (4) after the rejection, the position remained available and the employer continued to review applicants possessing comparable qualifications. See, e.g., Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002). Plaintiff has not shown that the City was considering upgrading anyone to a Strategic Advisor II position or that it continued to review any applicants possessing qualifications comparable to plaintiff's. Although plaintiff compares himself to Johnson, Johnson's position was reclassified to a Strategic Advisor I.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 7

### 2. The City's Legitimate Non-Discriminatory Reasons.

Even if plaintiff had made a prima facie showing of discrimination, which he has not, his claim would fail because the City has offered a legitimate, non-discriminatory reason for denying his appeal and declining to reclassify his position to a Strategic Advisor II. The panel determined, after reviewing all of the facts related to his actual, current job tasks, that the facts did not warrant his request to be classified as a Strategic Advisor II. Schaefer Decl. at ¶ 16; id. at Ex. B; see also Jorgensen Decl. at ¶ 8 ("I recall that it was very clear to me that Mr. Pineda's actual job duties more closely matched the specification for a Senior Finance Analyst than the duties of a Strategic Advisor"). Plaintiff's request for an upgrade was based primarily on his working on the City's Joint Training Facility ("JTF"). However, after the panel considered that issue, it concluded that Pineda's role with the JTF was "evolving" and "he had not yet started performing the significant project management duties that were anticipated." Schaefer Decl. at ¶ 12. In making classification decisions, the panel considered only an employee's actual duties as they existed at the time because anticipated changes might never materialize. Jorgensen Decl. at ¶ 5. In fact, the JTF project was eventually "scrubbed" and responsibility for it was taken away from Pineda. Pineda Dep. at pp. 253-54. Because of the evolving nature of plaintiff's responsibilities, the panel's final written decision noted, "A review of this position classification may be appropriate when its new duties and responsibilities have become established." Schaefer Decl. at Ex. B. For those reasons, after considering all of the facts, the panel determined that plaintiff's job duties did not warrant a Strategic Advisor II classification. Schaefer Decl. at ¶ 16.

Furthermore, to the extent that Mercure's provision of less support to Pineda than to Johnson can be considered an adverse employment action, the City has provided a non-discriminatory reason for it. Pineda has only identified two ways in which Mercure did not support him. First, he alleges that Mercure did not sign his PDQ, although he admits that he did not give him time to review it prior to the meeting. Pineda Dep. at pp. 47, 270, 274; Mercure Decl. at ¶ 19. Second, Pineda alleges that Mercure did not describe his role in the JTF, the

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 8

project that he alleges qualified him to be a Strategic Advisor. However, he acknowledges that he was performing that work for another supervisor, and it was "not Del's responsibility." Pineda Dep. at p. 271; Aspiras Dep. at p. 198 (stating his belief that Mercure may have been less supportive of Pineda's appeal "because he didn't get the PDQ until that day or he wasn't aware what Vic was doing for some of those projects" for other supervisors). Although the supervisor involved with the JTF was at the hearing and Pineda did not believe he was sufficiently supportive, Pineda does not accuse him of discrimination. Pineda Dep. at pp. 295, 297.

### 3. Pretext.

Because the City has provided legitimate, non-discriminatory reasons for its actions, the burden shifts to Pineda to provide some evidence of pretext. A plaintiff can either "show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (2003) (internal citation omitted). Plaintiff has not offered any direct evidence of discrimination. In fact, he does not challenge the panel's factual findings or argue that the decisionmakers were motivated by discriminatory animus. Pineda Dep. at pp. 16, 276 (accusing only Mercure of discrimination).

Where, as here, plaintiff fails to offer direct evidence and instead relies on circumstantial evidence, he "must put forward specific and substantial evidence challenging the credibility of the employer's motives." Vasquez, 349 F.3d at 642 (internal citation omitted). Far from meeting his burden, plaintiff's opposition to the motion for summary judgment is devoid of any discussion of the pretext element. Similarly, in his deposition, plaintiff was unable to identify any evidence of discriminatory animus. Instead, he stated that his claim of discrimination is based solely on the fact that Johnson received an upgrade and he did not. Pineda Dep. at p. 276 (responding, "Well, yeah, um-hum" when asked if his belief that Mercure supported Johnson more because of his race was based simply on the outcome of their appeals). Plaintiff's argument, that the decision made by individuals other than Mercure evidences Mercure's

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 9

discriminatory animus, does not appeal to logic.  Furthermore, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment.[5]  See, e.g., MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993).

The only argument plaintiff advances in response to the motion to show pretext is contained in his declaration, in which he states without explanation, "That Mr. Mercure asked me to turn in the space rent rate table quickly at about the same time of my own appeal, I believe, was unfair and deliberate and is an adverse employment action based on my race and national origin."[6]  Declaration of Victor Pineda, (Dkt. #26) ("Pineda Decl.") at ¶ 16.  However, Pineda was repeatedly questioned during his deposition about all instances of alleged discrimination, and he never identified that issue.  Pineda Dep. at pp. 70, 79-80 (stating, "it's all based on what a co-worker had received and what I did not receive"); id. at pp. 90, 276, 297. Furthermore, when asked during his deposition why he did not compile his appeal materials sooner, Pineda offered two explanations: (1) the month of April was a "fairly busy time" for the entire unit, including Johnson, Pineda Dep. at pp. 245-46, and (2) he "didn't even know" that he needed to submit a PDQ.  Pineda Dep. at pp. 274-75 (taking partial responsibility for not consulting Mercure about the appeal process); Schaefer Decl., Ex. A (letter to Pineda describing reclassification process, attaching additional information, and advising him on who to consult with questions).  Pineda cannot create an issue of fact by contradicting his sworn deposition testimony with a subsequent self-serving declaration.  See, e.g., Disc Golf Ass'n v. Champion Discs, Inc., 158 F.3d 1002, 1008 (9th Cir. 1998).  Accordingly, plaintiff has not established a prima facie case of discrimination or offered any evidence of pretext to undermine the City's

---

[5] Pineda's conclusory comparison between himself and Johnson is even less compelling because two of the four employees in Mercure's division who successfully challenged their reclassifications were Filipino-American.  Mercure Decl. at ¶ 21.

[6] Pineda stated in his deposition that Mercure provided him one cost item for the study on April 23, 2004, but he did not believe that the late provision of the information was intentional. Pineda Dep. at p. 190.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 10

non-discriminatory reasons for its actions.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for summary judgment (Dkt. #18).  The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff.

DATED this 20th day of November, 2006.

*[signature]*

Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 11